United States vs. Griffin? Mr. Frankel? Good morning. May it please the court, counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office for the Central District of Illinois. I represent Mr. Allison, co-counsel seated at the table with Mr. Frankel. He'll argue for Mr. Griffin. He'll cover the second issue. I'll cover the issues one and three in the brief. As for issue one, the 280-month sentence imposed on Mr. Allison should be vacated due to procedural error. After carefully examining the 3553A factors, the district court imposed a 240-month sentence. But the probation officer then interjected itself, speaking privately to the judge. The judge then gave a 288-month sentence. How long was their conversation? It's impossible to determine from the written record and I don't know. I wasn't present, Your Honor. But in any event, the conversation surely happened. It was a private conversation. The information could have been public and disclosed so that Mr. Allison could have heard it, but they chose not to do that. We relied on that information. Well, it's not impossible. Beg your pardon? Couldn't there be a hearing to determine what he told the judge? Yes, but based on the record presently, it's something that we can't determine. It's information that should have been disclosed if it was relied on to give the sentence that was ultimately given. Is it true that judges can never talk to probation officers in private? The probation service is part of the judiciary. Yes, they're also law enforcement officers, so I think it should be something that's carefully done. This court steers prudence and Spudik says don't have sentencing counsels, but conversations with I don't know. I can't answer. But isn't it a fact that Judge Darragh caught his own mistake? That's abundantly clear from the record. He said, I meant to say 24 years, 288 months. I said 240 months. I misspoke and he said that prior to talking to the probation officer. No, he didn't. He said I misspoke after he spoke to the probation officer, I believe, but I'd have to look at the appendix pages 26 and 27. In any event, what happened was the probation officer caught the judge's attention. Information was imparted to the judge. It was off record. It was then used to give a sentence of 288 months and there was no fuller explication of what had happened. The 3553A factors weren't examined, so we have an unreasoned sentence, which is improper under gall. We have a 288 month sentence that was given after a fully explicated 244, 240 month sentence. What he said, what the judge said was, let me see the probation officer for just a moment. I'm going to amend that term of imprisonment. Okay, so he's already decided he's going to change the term. It's not that the probation officer jumps up and says, judge, I have to talk to you, right? Well, hard to say again. Don't know what was done for one person to get the other's attention, but what is clear is we have an error prior to speaking with the probation officer. If it was as simple as that, I don't think that he should have caucused with the probation officer, right? It was a simple mistake. I don't need any other information from the probation officer. I said something wrong. I want to do this. Then I don't need to hear from my probation officer. If I could, though, I want to speak about the third issue just briefly, unless Judge Sykes has a question. I have a question about the drug calculation, and I don't recall whether you're covering that or your co-counsel. Co-counsel. Okay, then I'll hold it. As for issue 3, we believe that under Thompson there is a full resentencing that should happen in any event. Well, he said I misspoke, and he said it was my intention and is my intention to sentence Mr. Allison to a term of imprisonment for 24 years, and that equals 288 months. I think that's still said to the probation officer. Okay, I want to, I meant to sentence him to 24 years, but what is that in months? The probation officer says 288. That wouldn't be problematic, right? And that should all be on record, so we know that there's nothing that was said to influence the judge where the probation officer acts as an adversary as a Well, that would mean, of course, what? Some little in-camera proceeding with the probation officer and the court reporter and interrupting the sentencing? I don't think that it would be anything that couldn't have just been done on the record. Can somebody check my math? Can the probation officer speak to this? Those are all things that could have been done on record. We wouldn't have the issue, but if I could just briefly on the third issue. Yeah, sure. As for the third issue, I understand the government's position paper on this, Thompson, is to acknowledge that there is an error imposing conditions of supervised release. We believe that under Thompson, the remedy, the appropriate remedy is a full resentencing hearing. However, the Seventh Circuit has recently issued the case United States v. Booker Sewell, and in that gave a more limited remedy, and it's a partial remand for resentencing, where only conditions would be considered as part of the scope of remand. We believe that that is improper, that the Thompson remedy controls, because there's not been an en banc decision by this court to say that the remedy should be lessened. There's not been a case by the Supreme Court in the interim that said this should be lessened. There's been no change in the statute, so it's a matter of stare decisis. The appropriate remedy on the third issue is a full resentencing. So what would be the point of that? I mean, you've got to, you know, bring this guy back from Butner, North Carolina, or wherever he is, for the point of what? That's something the judge can just simply readily do in a more nuanced way, give these supervised release conditions. What do you get from a full, a whole new sentencing hearing? Because in Thompson, Thompson discussed the importance of supervised release. Now, it's not been addressed in the way that it should, and it can affect the total sentence that's imposed. And so, to parcel out an important aspect of the sentencing in the limited fashion that Your Honor is saying is inconsistent with Thompson, and it's clearly inconsistent with the remedy that was given in Thompson. Page 280 or 282 of the opinion concluded with what the appropriate remedy was, and it didn't say just bring him back to resentence, it's only in the limited respect as to the conditions of supervised release. Because supervised release is an important part of sentencing. It should all be done part and parcel. Thank you. Okay. Okay, thank you. Mr. Hellers? Good morning, Your Honor. Scott Frankel. Oh, sorry, I got backwards. Yes, sir. Scott Frankel on behalf of Defendant Corey Griffin. May it please the Court, I'm here to address the issue of the sentencing. The standard of review on a sentencing issue is... We've got limited time here, and I know you want to argue about the reliability of the co-conspirator's testimony, but I think there's a calculation error that needs to be addressed initially that got us to the final numbers. It's my understanding that the drug quantity, the per day drug quantity that was assigned to the St. Louis-Ohio Street intersection was 54.6 grams per day. Right. And then the drug quantity that was assigned to the Chicago-Christiana intersection was 72.8 grams per day, and then that was multiplied by the number of days on which each of these defendants participated in the conspiracy to get their respective drug quantity totals. And those per day transaction numbers were arrived at by the following formula, as I understand the record. Three bundles per day, seven packs per bundle, so three times seven packs per bundle, by the number of blows per pack, 13, by the amount of heroin per pack, 0.2 grams. That's my understanding as well. Right, and that is how you get to 54.6 grams per day, but that formula contains an inherent redundancy. If there's 0.2 grams per pack, then you shouldn't be counting the number of blows per pack, and using the 13 as a multiplier in that formula, and taking out the 13, because we don't have a measure of blows, right? Right. If the total grams per pack is 0.2, regardless of how many blows that represents, then the 13 is a gratuitous multiplier, a 13-fold multiplier, and if you take it out, you get to a far lower number, something like 4.2 grams per day, instead of 54.6, right? I mean, I don't expect you to do this math on the fly, but I don't understand why the 13 blows per pack is in there as a multiplier. Well, I'm not sure how the government is using that term, blow versus each gram. It's my understanding that if everybody agreed that each pack contains 0.2 grams total, that 0.2 grams isn't the measure of what each blow is. You'd only include the 13 blows as a variable here. Doesn't it mean that in each pack, there's 13 individual uses, and that's what a blow is? So there is, in fact, 13 blows per pack. It's like that's the quantity that the user uses is each blow, correct? I am not sure, so I don't want to answer that question. I get what a blow is.  It was the government's formula. And nobody questioned it, but there's a real substantial miscarriage of justice here if we're talking about 4.2 grams per day instead of 54.8 or whatever it was. That's a big difference and means decades off the sentence, right? So somebody needs to check this, and I'll ask the government. But unless the 0.2 grams is a measure of the quantity of each blow as opposed to the total in each pack, then the 13-fold multiplier doesn't belong in the formula. Right, right. What's the weight of a blow normally? Is it as high as 0.2 grams? I thought each blow was 0.1 gram when I was trying to figure out what they meant by this formula, and that would be one use. Well, then if there's 13 blows, we don't get to just 0.2 grams per pack if there's 13 blows per pack. If each blow is 0.1 gram, then we'd be at a much higher amount. I suspect the 13 blows doesn't belong in there. Right, it's just a superfluous multiplier. Right, so all of this debate about the reliability of the co-conspirator's testimony is beside the point if there's a severe formula issue here. Would you like us to brief that with a supplemental? Well, maybe the government can adequately explain it or concede it, and since the case is going back anyway, we don't need anything else, but we need to clarify that. I agree, and I'm not prepared to answer that question. Right, and I didn't mean to take all your time, but that's a major issue for me. Sure, and I understand, and I'm not even going to belabor the other issue, which is that in our view, the testimony of Ramey and Taylor was not sufficient to justify the government's other extrapolations about the weight here, and we're talking about an enormous amount of time. If you get over 30 kilograms of heroin, you are at a base level of 35. The guideline range for Corey Griffin was 235 to 293 months, as calculated by the probation officer, and the judge ended up giving him 210 months, obviously. How old is Griffin? He's in his early 40s, so it would be our argument that if you're looking at such a large sentence, the standard for reliability, I think, as Judge Sykes has pointed out, should be carefully tested and challenged, and in this case, I don't think the government can meet its burden here to prove that the evidence was reliable. For all those reasons, we'd be asking the courts to, you're already remanding the sentence, but to remand with instructions consistent with our briefs. Okay, thank you, Mr. Frankel. Ms. Bonamici? May it please the court, good morning. I'll start with the question about the drug calculations because that seems to be what's going on, and I will say that the government is not prepared to answer your questions. It's not something that we noticed either. I had understood, the way that we had phrased it in the brief was or, but I had understood that it was two grams per blow. That's not what you said in your brief. In your brief you said two grams per pack. That's correct. .2 grams per pack. I just looked at it, and you're right. The way that it's phrased is not the way that I had it in my mind. Well, and .2 grams per blow would be a lot, right? That makes sense to me. So that's got to be a mistake. I agree that there does appear to be a mistake here, and the government would suggest that both parties file post-argument position papers or whatever to clarify the record. What's the standard user quantity? Do you know off the top of your head what the standard user quantity is? I don't. Not in this case. I don't, Your Honor. So with that in mind, I mean, what we would request is a chance to thoroughly go through the record and present to the court a detailed analysis of this. And if it turns out that the analysis is incorrect, as you suggested, we'll concede that in our filing. But without a chance to review the record in detail, I would not want to do that on the fly. So if that's acceptable, that's what we will do. On the issue of reliability, the government, as it argued in the brief, disagrees with the defendant's contention that the witnesses were not sufficiently reliable for the court to include in its decision. That's particularly true given the wealth of corroborating evidence, more generally, including evidence concerning five separate seizures of heroin and the testimony of numerous other witnesses, and most importantly, the admissions made by the defendants themselves, both in the plea agreements and in statements made after at least one of the seizures. So reliability is not an issue. However, this calculation concerns me greatly and we will definitely respond to that. Now, why did the judge talk to the probation officer? Your Honor, I believe that Judge Simon had it exactly right. My reading of the record, taken as a whole, is that the judge wanted to make sure that it had the right number. He didn't want to make the mistake the second time and provide a wrong number of months to correspond with the 24-month sentence that the court stated that it originally intended to impose. Does this happen in other cases that a judge talks to a probation officer? You mean, I think it happens in... Out of the hearing of the... I don't know about that, Your Honor. I don't think that this was a particularly unusual situation. I don't know that another judge or maybe even this judge at another occasion might have just said out loud, you know, I meant to impose 24 months. Somebody tell me how many months that is or check my math. That could have happened. But in the context here, the defendant has provided absolutely no reason for this court to question in any way. The district court's veracity when it explained precisely what happened and said that it always intended to impose a 24-month sentence and after speaking with probation stated on the record that it had misspoken. You're misspeaking right now. You keep saying 24 months. Oh, I see. There you have it. Just as an example. How many years is it? No, I really do think that the record quite clearly reflects that kind of situation, and there's nothing more to be made out of it, and there's certainly no reason to question the court's veracity on this topic. Now what about the conditions of supervised release? Well, Your Honor, we agreed in the 28-J letter, I believe, that under Thompson the district court failed to make the proper findings that were necessary to support the labeled standard conditions that it imposed. So you want to remand on conditions? We do. We do. As Judge Simon pointed out, in our view, it's not necessarily true that in every case a full remand of the entire sentence is necessary in order to accomplish that goal. There are certain circumstances as there were in, for example, Thompson, which was before you in Thompson, where the defendant had specifically argued for a lower term of imprisonment based on substantial conditions of supervised release. And in that situation, we think a full remand is appropriate and really necessary. On the other hand, in the run-of-the-mill case, where a court has imposed standard conditions without making the proper findings, a situation hopefully we're not going to be seeing in the future, in that kind of situation we do question the need for a full remand. Of course, if after review of the record in this case, we determine that there was a mistake made with respect to the guideline calculation, then a full remand, we will concede, is necessary to handle that problem. Do you know how old Griffin is? I didn't off the top of my head, but counsel just said that he was in his 40s at this point in time. Well, this has been 24 years, a very long sentence for someone in his 40s? Well, Griffin received a sentence of 210 months, but it's still a very long sentence. Oh, I'm sorry. The 24 years is Allison? Correct. How old is Allison? I don't know how old he is, but he had a long, and he's a longtime traveling vice lord and had a very, very long criminal history before this. No, I understand that, but the drug criminals tend to exit their drug activities when they become middle-aged, don't they? I don't think that that's always true, Your Honor. I really don't. I'm sure it's not always true. And anyway, here's Griffin in his 40s, which is approaching middle age. Pardon? Of course, middle age changes as we get older, but Mr. Griffin is in his 40s today having committed this crime very recently, and so I think that suggests that, well, I guess it depends on the definition of middle age, but I think at one point in time we might have considered a 40-year-old drug dealer as an anomaly. No, no, I'm not thinking about that. I'm thinking about when they get out, right? Right. Well, you get a discount if you behave yourself, but if you get out after 20 years and you're in your 60s, you're not likely to be in the drug business. Well, unfortunately, Judge, I was just at a hearing in the district court where a defendant who I prosecuted a long time ago, who is in his 60s, was just prosecuted again for selling cocaine in his early 60s. So I just don't know that it's true. It's not necessarily true from my own personal experience, anecdotal as that may be. So in conclusion, Your Honors, if there are no further questions, the court would ask that this court remand this case for the limited purpose of reconsidering the supervised release conditions unless it turns out upon our further review that there is a problem with the drug calculation, in which case we'd like to file something and we will ask the court for a full remand if that's the case. Okay, well, thank you, Ms. Bonamici. So Mr. Hillis or Mr. Frankel, do you have anything further? Your Honors? Briefly, no one is impugning the veracity of the district court. I heard that word mentioned several times. We are arguing about due process, and information is imparted from the probation officer to the judge that can influence the decision. That is a matter of due process, and judges do meet with probation officers outside of the presence of individual defendants. It happens before hearings, and in this case it happened during the hearing. It was essentially information imparted without the knowledge of my client, and so that's a matter of due process. It's not a matter of impugning the veracity of any judge. As far as the scope of the remand, it should be a full resentencing, regardless of the government's position on the drug quantity, which is a significant issue, and we believe that should be addressed. But that is separate and apart from what would be required as an appropriate remedy under Thompson. And again, Thompson is stare decisis regardless of what Sewell said by way of a more limited remand for a more limited resentencing hearing. Thompson requires a full remand, and it is not a matter of if it's inconvenient or expensive for a district court to have the hearing. It is about the rights of the individual who have to labor under the sentence that's given and the conditions that are imposed. And these are conditions, again, of supervised release that can run the gamut of zero to the rest of your life. And so it's important that we give thoughtful consideration for the holistic sentence that's imposed, and perhaps the judge could be persuaded to give something less than the sentence given here because of the deprivation that these individuals live under through the supervised release period. But again, the context of the drug calculations may be the more serious issue for the consideration upon remand. So we ask this court to remand for resentencing. Thank you. Okay, well, thank you very much to both counsel, or three counsel. And we'll move on to...